IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

JESSE DAVID SEDLER,                    Cause No. CV 05-31-M-JCL

      Petitioner,

    vs.                                FINDINGS AND RECOMMENDATION
                                       OF U.S. MAGISTRATE JUDGE
ATTORNEY GENERAL FOR THE
STATE OF MONTANA,

      Respondent.

_____

On March 9, 2005, Petitioner Jesse Sedler filed this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Sedler is a former state prisoner proceeding pro se.

On February 2, 2006, the Court ordered Sedler to show that his postconviction appeal to the Montana Supreme Court had concluded. He was also directed to file an amended petition to clarify his claims for relief. Sedler filed additional documentation from the Montana Supreme Court on February 24, 2006. He filed an amended petition on March 1, 2006.

**I. Preliminary Screening**

Rule 4 of the 2254 Rules requires courts to examine the petition before ordering the respondent to file an answer or any

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  *Id*.  If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."  *Id*.

## II. Factual and Procedural Background

On September 4, 2002, a jury in Montana's Nineteenth Judicial District Court, Lincoln County, convicted Sedler of felony assault with a weapon, intimidation, misdemeanor assault, and trespass. *See* Pet. (doc. 1) at 2-3, ¶¶ 1-2, 4-6.  The State's theory of the crimes was that Sedler angrily approached Andrew Maling's cabin at 5:00 a.m. on May 23, 2002, and threatened him with an axe.  The two struggled over the axe.  When Sedler dropped it, he picked up a stick – a bow stave – and began hitting Maling with it.  Maling picked up the axe and ran to the house of a neighbor, Scott Rodich. When Rodich's daughter let Maling in, Sedler followed and threatened to burn down Maling's cabin if Maling told anyone about the assault.  *See* Supplement (doc. 2), Police Report at 1-2;[1] *see*

---

[1]   Three documents are attached to Sedler's petition: postconviction counsel's memorandum in support of postconviction relief (Pet. Ex. A), Sedler's pro se letter to the Montana Supreme Court, dated December 1, 2004, in response to counsel's *Anders* brief on postconviction appeal (Pet. Ex. B), and the state trial court's order denying postconviction relief (Pet. Ex. C).
Five days after Sedler filed his Petition, he submitted additional documentation in support.  *See* Supplement (doc. 2).

*also id.*, Pet'r Statement Feb. 10, 2003, at 1.

On October 24, 2002, Judge Michael Prezeau found that Sedler "suffers from a mental disorder which compromises his ability to fully appreciate the criminality of his conduct and to conform his behavior to the requirements of the law." Judge Prezeau noted that two mental health professionals, Dr. Meyer and Mr. Volkman, recommended a sentence that would allow Sedler to obtain treatment for this disorder, which Dr. Meyer diagnosed as paranoid schizophrenia. Accordingly, Judge Prezeau sentenced Sedler to serve 150 days in the Lincoln County Detention Center, with credit for 150 days already served, and committed him to the custody of the director of the Department of Public Health and Human Services for a total of ten years. Sedler was advised that he had 120 days from the date of the Judgment to contest any perceived discrepancies between the sentence pronounced in open court and

---

These documents were in no discernible order, many were (and remain) incomplete, and many pages were out of order. The documents have been rearranged in the Court's file in date order. They include, but are not limited to, the police report cited here, the trial court's Judgment, two lengthy statements by Sedler, and the *Anders* brief submitted by counsel on Sedler's postconviction appeal.

In response to the Court's Order of February 2, 2006, Sedler filed an Amended Petition (doc. 5) on March 1, 2006. He attached to it a copy of the Montana Supreme Court's decision of January 4, 2005, dismissing the postconviction appeal; newspaper articles; a statement captioned for this Court but dated 2/20/02 (presumably a typographical error that should read 2/20/06); another statement dated 2-24-06; and a copy of the Affidavit of Scott Spencer, Sedler's trial counsel, dated March 22, 2004, and apparently filed in the postconviction proceedings in the trial court.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

that imposed in the written Judgment.  *See* Supplement, Judgment at 2-3, *State v. Sedler*, No. DC-02-40 (Mont. 19th Jud. Dist. Oct. 24, 2002).

On February 10, 2003, Sedler sent a statement to the Montana Supreme Court, referring to "this appeal" and stating that he was "appealing the conviction on the basis of a very inadequate public legal service by attorney Scott Spencer."  Supplement, Pet'r Statement Feb. 10, 2003, at 1.  A notice of appeal was filed on February 26, 2003.  *See* Supplement, Order Authorizing Preparation of Transcript at 1; Pet. at 3, ¶ 8.

On September 2, 2003, Sedler sent another statement to the Montana Supreme Court and, apparently, to the trial court, stating that he was "filing a Petition for Post Conviction Relief."  Supplement, Pet'r Statement Sept. 2, 2003, at 1.  On October 7, 2003, the Montana Supreme Court remanded Sedler's case to the trial court for a determination as to whether new counsel should be appointed, since it appeared that Sedler wished to raise on direct appeal claims regarding counsel's performance at trial.  *See* Supplement, Order at 1, *State v. Sedler*, No. 03-337 (Mont. Oct. 7, 2003).  On October 17, 2003, Chief Appellate Defender Chad Wright wrote to Sedler, explaining the scope of review on direct appeal. *See* Supplement, Letter from Wright to Sedler (first page missing).

On December 26, 2003, after voluntarily dismissing his direct appeal, Sedler filed a petition for postconviction relief in the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

trial court.   *See* Pet. Ex. C, Order Denying Pet. for Post-Conviction Relief at 2, *Sedler v. State*, No. DC 02-40 (Mont. 19th Jud. Dist. June 23, 2004).  He was represented by Wright, who filed a memorandum in support of the petition.   *See* Pet. Ex. A, Mem. in Supp. of Pet. for Post-Conviction Relief, No. DC 02-40 (Mont. 19th Jud. Dist. Dec. 24, 2003).  Wright argued, first, that Sedler's right to due process was violated when the trial court orally instructed the jury that Sedler had the burden of proving the elements of the felony assault charge.  Second, Wright argued that counsel was ineffective in failing to object to that oral instruction, in failing to investigate Sedler's mental illness and failing to order a confidential evaluation, and in failing to explain to the jury that the intimidation charge must be considered separately from the assault charges, thus increasing the likelihood of a conviction on all three charges.  *See id*. at 1, 2, 4-6.

On June 23, 2004, the trial court denied the petition, finding that the erroneous oral instruction was harmless in light of the other oral and all of the written instructions.  *See* Pet. Ex. C at 5.  The court also found that trial counsel's failure to obtain another mental evaluation was a reasonable tactical decision, *id*. at 7, and that counsel's trial strategy was to deny the assaults occurred, so that his failure to emphasize an alternative reason for Sedler's threat to burn down Maling's house was not objectively unreasonable, *id*. at 8.  Judge Prezeau concluded that there was no

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

reasonable probability that the verdict would have been different if counsel had done what Sedler claimed he should have. *Id.* at 9.

Sedler appealed. *See* Supplement, Notice of Appeal at 1, *Sedler v. State*, No. DC 02-40 (Mont. 19th Jud. Dist. July 27, 2004). Wright filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), *see* Supplement, *Anders* Br. at 6-8, No. 04-622 (Mont. Nov. 10, 2004),[2] and moved to withdraw. On December 1, 2004, Sedler filed a response to the *Anders* brief. He reiterated the instruction claim, which Wright had omitted from his *Anders* brief. He also emphasized his disagreement with Spencer's decision not to obtain an updated psychological evaluation. Finally, he concurred with Wright's analysis of Spencer's failure to explain the difference between the intimidation count and the assault counts. *See* Pet. Ex. B, Pet'r Statement, Dec. 1, 2004, at 1-3.

On January 4, 2005, after conducting an independent examination of the record, the Montana Supreme Court granted Wright's motion to withdraw and dismissed the appeal as frivolous. *See* Am. Pet. (doc. 5-2) at 1.

On March 9, 2005, Sedler filed his petition in this Court.

## III. Sedler's Allegations

Because it was not clear what grounds for relief Sedler wanted

---

[2] The *Anders* brief bears the wrong case number. It should be No. 04-622. *See* Supplement Order at 1, No. 04-622 (Mont. Nov. 12, 2004); *id.*, Order at 1, No. 04-622 (Mont. Jan. 4, 2005).

the Court to consider, he was given an opportunity to amend his petition to clarify his claims.  Unfortunately, he responded by referring to the claims "as stated in original appeal to the federal court" and "previously filed in this Court."  Am. Pet. at 4-5, ¶¶ 15A-15B.  The Court will do its best to address the claims Sedler attempted to state.

Sedler contends, first, that he did not commit the crimes of which he was convicted – trespass, assault, and intimidation.  He states that he did not appeal because the trial court judge and defense counsel told him he had 120 days to appeal, not the sixty provided by Montana law.  He also states that he "will send a copy of my original request for postconviction relief."  *See* Pet. (doc. 1) at 6.  The memorandum in support of postconviction relief alleges, as its first ground for relief, that Sedler's right to due process was "violated by the district court's erroneous instruction regarding placing the burden of proof on Mr. Sedler for the assault with a weapon charge."  *See* Pet. Ex. A at 1.

Sedler's second ground for relief states only "will send my request for postconviction which is based on trial transcripts," "my appointed attorney refused to contend all the charges," and "see Ex[h]ibit B."  Pet. at 7-8.  Exhibit B is Sedler's response to Wright's *Anders* Brief on postconviction appeal.

Sedler's third ground for relief says, "same as my original request for postconviction relief is."  Pet. at 9.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

Sedler's Amended Petition adds "defamation of character" as a ground for relief, based on newspaper articles published before the trial and after his conviction. *See* Am. Pet. at 5, ¶ 15C.

Sedler's Amended Petition describes this action as raising "all issues previously raised including Maling's original testimony to Sheriff's vers[u]s trial testimony." *Id.* at 7, ¶ 16.

For his relief, Sedler seeks a hearing concerning discrepancies between trial and sentencing, a new trial, *see* Pet. at 15, "investigation into trial transcripts, judgment, or new trial," dismissal of the assault charges for lack of evidence, and restitution for damages that are due to his conviction of being a paranoid schizophrenic, Am. Pet. at 8, ¶ 18.

Sedler's February 20 statement says that he is "no longer contesting the misdemeanor trespass or the felony intimidation by threat of arson." Am. Pet. Pet'r Statement Feb. 20, 200[6], at 1. Sedler refers to "pages six and nine of my appeal"; he presumably refers to his February 10, 2003, statement directed to the Montana Supreme Court, in which he sets forth his version of the events in question. *See* Supplement, Pet'r Statement Feb. 10, 2003, at 6, 9. At any rate, it is fairly clear that he alleges that Maling's testimony in court was not identical to his report to the police, that the evidence was not sufficient to convict him of the assaults, and that he is innocent. *See also* Am. Pet. Pet'r Statement Feb. 24, 2006.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

## IV. Analysis

Although one or more procedural bars probably apply to Sedler's claims, it is more efficient to proceed to the merits.

Sedler's claims must be rejected unless the Montana Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or unless its opinion was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). "A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (as amended) (citing *Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)). A state court's decision is an "unreasonable application" of federal law if it is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). While this standard is not precise, it is clear that the state court's decision must be "more than incorrect or erroneous." *Id.*

### A. Sufficiency of the Evidence

Sedler contends that he did not commit the offenses of which he was convicted. He also asserts that there were inconsistencies

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

in Maling's and Rodich's testimony that would, if interpreted in the light most favorable to him, suggest that Maling attacked him when he approached Maling at 5:00 in the morning, carrying an axe,[3] to see about some archery equipment that Maling was making for him. Based on the materials before the Court, it is clear that the evidence was sufficient to convict Sedler.

*Jackson v. Virginia*, 443 U.S. 307 (1979), holds that evidence is insufficient to support a conviction if no reasonable juror could have found the facts necessary to support a conviction beyond a reasonable doubt.  A federal court does not reconsider or re-weigh the evidence in habeas proceedings.  All this Court can do is decide whether the evidence presented by the State was sufficient to support the jury's decision to convict Sedler:

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Id*. at 318-19 (1979) (emphasis in original) (internal quotation

---

[3]   *Cf.* Supplement, Pet'r Statement Feb. 10, 2003, at 3 ("During the trial ... I described the event of A. Maling cocking his arm with the axe and actually threatening me several times with it.... This action ... is important because it occurred right after he grabbed the axe from me while I was standing there talking to him.").

marks and citation omitted).

Witnesses testified that Sedler threatened Maling with an axe and hit him with a stick.[4] *See* Supplement, Pet'r Statement Feb. 10, 2003, at 2-4, ¶ 2; *id.*, Pet'r Statement Sept. 2, 2003, at 5. Rodich said Sedler chased Maling to his house, entered without permission, and then threatened to burn down Maling's cabin. *See id.*, Pet'r Statement Feb. 10, 2003, at 5-7; *id.*, Pet'r Statement Sept. 2, 2003, at 9, 10. It was up to the jury to decide whether those witnesses were telling the truth or whether Sedler's testimony was truthful.[5] Here, a rational trier of fact could have decided that the alleged inconsistencies and contradictions in other witnesses' testimony were unimportant and understandable in light of the quick progression of the events in question as well as the time lapse between those events and the trial.

The prosecution is not required to produce evidence to "rule out every hypothesis except that of guilt beyond a reasonable

---

[4]   Maling also said that Sedler hit him with rocks. That charge was dismissed at the close of the State's case for lack of evidence. *See* Supplement, *Anders Br.* at 1; *id.*, Pet'r Statement Feb. 10, 2003, at 4 ¶ 3; *id.*, Pet'r Statement Sept. 2, 2003, at 6 ("What your testimony here is today was that he was striking you, you don't know with what. Is that correct?" "That's correct."), 7.

[5]   Sedler says that he knocked on Rodich's door and "then identified myself to S. Rodich by opening the door and showing myself." Supplement, Pet'r Statement Sept. 2, 2003, at 9. He does not say that anyone inside the house ever acknowledged his knock or invited him in. Even if he had, it would be up to the jury to decide whether he or the other witnesses were telling the truth.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

doubt." *Jackson*, 443 U.S. at 326 (citing *Holland v. United States*, 348 U.S. 121, 140 (1955)).  Sedler points to nothing that logically precludes his conviction.  Conflicting evidence was presented to the jury, and it was up to the jury to decide which version of events was most credible.  It did not act unreasonably in deciding to believe the State's witnesses and not Sedler.

**B. Claim of Innocence**

Sedler has not adduced evidence proving his innocence.  He only points to what he perceives to be inconsistencies and contradictions in the evidence and testimony presented at trial. Again, the case revolves around credibility determinations that the jury was entitled to resolve and that this Court may not question. Even assuming a federal court may grant habeas relief solely on the grounds that a petitioner proves that he is, in fact, innocent, Sedler is not entitled to such relief here.

**C. Ineffective Assistance of Counsel Claims**

Sedler contends that counsel was ineffective in failing to object to the trial court's misstatement of the burden of proof in its oral reading of the jury instructions, in failing to request another expert evaluation of Sedler's mental health, and in failing to argue to the jury that the intimidation charge was separate from the assault charges.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets the standards with respect to claims regarding ineffective assistance

of counsel.  Sedler must show that counsel's performance fell below
an objective standard of reasonableness, *id*. at 687-88, and that he
was prejudiced by counsel's errors, *id*. at 693.  Under the first
prong, counsel's performance need not be perfect.   It must,
however, fall "within the range of competence demanded of attorneys
in criminal cases."  *McMann v. Richardson*, 397 U.S. 759, 771
(1970)).  Under the prejudice prong, Sedler must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." *Strickland*,
466 U.S. at 694.   "A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  *Id*.

### 1. Misread Jury Instruction

On this claim, the trial court found that the erroneous oral
instruction was harmless in light of the other oral instructions
and the written instructions provided to the jury.  Sedler does not
claim that the written instructions or any of the oral instructions
on the other counts were incorrect.  Given these facts, the jury
would have known that the State had to carry the burden of proof on
each of the charges.  It would not have thought that the State had
the burden on all charges except for the felony assault charge,
which Sedler was required to prove against himself.  At any rate,
allocation of the burden of proof is important when the defense
does not present a case; where the defendant testifies, as Sedler
did here, the jury may consider his own evidence against him.  *See,*

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

*e.g.*, *Lamere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006).

There is no reasonable probability that the jury would not have convicted Sedler of felony assault if only Spencer had objected to the trial court's slip of the tongue in reading the jury instructions.

### 2. Mental Evaluation

Sedler's position on this point is unclear.  In the *Anders* brief on postconviction appeal, Wright argued that Charles Evans, another attorney who had assisted Sedler in the past, encouraged Spencer to obtain an updated psychological evaluation and believed that Sedler was acting erratically and irrationally.  *See* Supplement, *Anders* Br. at 4.  In response, Sedler appeared to argue that he needed an updated mental evaluation to show that he was *not* mentally ill and that he only has a personality disorder.  *See* Pet. Ex. B at 1-2.

Under Montana law, a defendant may introduce evidence of a mental disease or defect at trial to show that he could not act knowingly or purposely.  *See* Mont. Code Ann. § 46-14-102 (2001); *State v. Korell*, 690 P.2d 992, 996 (Mont. 1984).  At sentencing, evidence of a mental disease or defect may be relevant for other purposes:

> The sentencing judge's consideration of the evidence is
> not the same as that of the jury.  The jury determines
> whether the defendant committed the offense with the
> requisite state of mind, e.g., whether he acted purposely

> or knowingly.  The sentencing judge determines whether,
> at the time the defendant committed the offense, he was
> able to appreciate its criminality or conform his conduct
> to the law.

*Korell*, 690 P.2d at 996.

Spencer did not mount a mental disease or defect defense at trial.  Sedler does not claim that he was unable to act knowingly or purposely[6] or did not know what he was doing as a result of a mental disease or defect.  On the contrary, he argues that he knew perfectly well what he was doing, and that he did not commit the crimes of which he was convicted.  Consequently, an updated evaluation would not have been useful at trial, because there is no indication that Sedler was unable to act knowingly or purposely.

At sentencing, the trial court took Sedler's mental state into account and crafted a sentence that would allow him to obtain counseling and treatment.[7]  An updated evaluation might have been

---

[6]    There is no indication whatsoever that Sedler was delusional, but even if he was, he was capable of acting knowingly and purposely under Montana law.  *See, e.g.*, *State v. Byers*, 861 P.2d 860, 872-75 (Mont. 1993) (reaffirming previous holdings that "proof beyond a reasonable doubt that a defendant consciously shot another with a gun where no circumstances of mitigation, excuse or justification appear, and the other died from the gunshot, will suffice to convict the defendant of deliberate homicide, without proof that death was the intended result by the defendant," *id*. at 874).

[7]    Sedler complains that the sentencing court ignored the previous year's report by Robert Shea, Ph.D.  *See* Pet. Ex. B at 2. Shea recommended that Sedler undergo "a course in anger management counseling."  *See* Supplement, Shea Letter to Ann German at 2. Sedler did so, with Peter Volkmann.  After Sedler initiated that counseling and attended 30-odd sessions, he committed the offenses

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

useful insofar as Sedler could have been sent to prison instead of Warm Springs (to whatever extent he would have preferred that outcome), but again, there is no indication that an updated mental evaluation would have changed the sentencing judge's decision.  The judge relied on the previous year's psychological evaluation by Dr. Meyers and the testimony of Mr. Volkman, who had been treating with Sedler for the past year.  Wright did not obtain an updated mental evaluation demonstrating the inadequacy of those persons' testimony.  Sedler is not entitled to a new opportunity to do in this Court what he could have done in state court.  *See* 28 U.S.C. § 2254(e)(2).  Sedler cannot show prejudice as a result of Spencer's failure to obtain an updated mental evaluation.

### 3. Distinction Between Assault and Intimidation Charges

Although Sedler says he is dropping his claims as to the intimidation charge, he also says that counsel's failure to emphasize the distinction between the intimidation charge and the assault charges at trial contributed to his conviction on the assault charges.  Consequently, the Court will consider this claim.

Sedler has not quoted his testimony from the transcript or provided an excerpted copy.  However, Wright's *Anders* brief says

---

of which he was convicted in this case.  Shea's apparent belief that Sedler just needed a little anger management counseling was therefore questionable.
    Sedler also states that he benefitted from the treatment he received at Warm Springs.  *See* Supplement, Pet'r Statement to Judge Prezeau Sept. 2, 2003, at 1.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

that Sedler "admitted that he threatened to burn Maling's place down if he kept lying" and "said that he merely made the statement because he was emotional, but the statement was completely unfounded." Supplement, *Anders* Br. at 5 (citing Tr. Sept. 4, 2002, at 234, 256). *See also id.*, Pet'r Statement Feb. 10, 2003, at 6-7.

"*Strickland* requires deference to [counsel's] informed strategic choices." *Hovey v. Ayers*, 458 F.3d 892, 906 (9th Cir. 2006). Spencer's theory at trial was that the assaults did not occur. If they did not occur, the State's theory – that Sedler threatened Maling to prevent him from reporting the assaults – did not make sense. Spencer's approach was not objectively unreasonable. If the jury had truly been left with Sedler's admission that he threatened to burn down Maling's house, with no explanation as to why he said what he said, then Spencer's performance *might* have been deficient. However, since Sedler testified to an alternative explanation for his threat, the jury was able to consider that evidence and was not left without an explanation for Sedler's threat. Sedler supplied the explanation in his own testimony.

Finally, Sedler again fails to show prejudice. Because Sedler gave the jury an explanation for his threat to burn down Maling's house, he could have been acquitted on the intimidation charge even though he was convicted on the assault charges. His conviction on the intimidation charge did not make it more likely that the jury

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 17

would convict on the assault charges.  The jury simply decided that it did not believe his testimony.  There is no reasonable probability that the verdict would have been different if only Spencer had emphasized Sedler's explanation or explained that the jury's verdict on the intimidation charge must be considered separately from its verdict on the assault charges.

### 4. Misinformation Regarding Time to Appeal

Sedler contends that the trial court and defense counsel misinformed him that he had 120 days to appeal.[8]  He did not raise this claim in his postconviction proceedings or in his statement to the Montana Supreme Court on what he deemed to be an appeal.  *See* Supplement, Pet'r Statement Feb. 10, 2003.  Thus, it is probably procedurally defaulted.  Since Sedler had postconviction counsel, he probably could not show cause and prejudice to excuse his default, nor has he shown that he is actually innocent.  *See supra*, Part IV.A.[9]

_____

[8]  Actually, the trial court correctly told Sedler that he had 120 days to object to any perceived discrepancy between the oral and the written judgment.  *See* Supplement, Judgment at 3, ¶ 6.  The trial court's advice in the judgment, and Sedler's ascription to the trial court of mistaken advice concerning the time for appeal, strongly suggest that he simply misunderstood what the 120 days were for.

[9]  To overcome a finding of procedural default, a federal habeas petitioner must show a legitimate excuse, or cause, for the procedural default in the state courts.  *See Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991).  "A showing of cause 'must ordinarily turn on whether the prisoner can show that some objective factor *external to the defense* impeded [petitioner's]

Additionally, in his "statement" on direct appeal, Sedler said, "I am appealing the conviction on the basis of a very inadequate public legal service by attorney Scott Spencer." *Id.* at 1. The Montana Supreme Court will hear ineffective assistance of counsel claims on direct appeal "only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused." *State v. Worthan*, 138 P.3d 805, 809-10 ¶ 18 (Mont. 2006) (quoting *State v. White*, 30 P.3d 340, 344 ¶ 20 (Mont. 2001)) (internal brackets omitted). Under that rule, Sedler could not have raised on direct appeal the claims set forth in his February 10, 2003, statement.[10]

Moreover, Sedler does not say that he told Spencer he wanted to appeal, and he has made no showing that a rational defendant

---

efforts to comply with the State's procedural rule.'" *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) (emphasis added) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Additionally, the federal court must first determine whether the proffered cause has itself been properly exhausted. That is, the proffered cause must also meet the exhaustion requirement, just as if it were asserted in the petition as an independent basis for relief. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "Prejudice" must be actual harm resulting from the constitutional violation alleged as grounds for relief in the petition. *Thomas*, 945 F.2d at 1123.

Sedler may set forth any argument he cares to make in support of cause and prejudice in his objections to this Findings and Recommendation. Alternatively, the Court recommends dismissal of the claim on the merits.

[10] The oral instruction claim could have been raised on direct appeal. However, that claim was frivolous, for the reasons set forth in Part IV.C(1).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 19

would have wanted to appeal or that there were nonfrivolous grounds for appeal.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

Finally, Sedler pursued a direct appeal and voluntarily dismissed it.  *See* Supplement, *Anders* Br. at 2-3.  Sedler is not entitled to federal habeas relief on this claim.

### D. Erroneous Oral Instruction

For the reasons set forth in Part III.C(1), there is no merit in Sedler's postconviction claim that the trial court violated his due process rights by misreading the burden of proof instruction on the felony assault charge.

### E. Defamation and Damages

In his Amended Petition, Sedler asserts that he seeks restitution or damages "due to conviction of being a paranoid schizophrenic."  Am. Pet. at 8, ¶ 18.  He also states "defamation of character" as his third claim for relief.  *Id.* at 5, ¶ 15C.

Sedler was not convicted of being a paranoid schizophrenic. Money damages are not available as a habeas remedy.  His defamation claim alleges that he was wrongfully committed to the Montana State Hospital.  The judge, not the jury or the newspapers, made the decision to send him to Warm Springs, and there is ample support in the evidence before the Court for the trial judge's decision.  For all of these reasons, these claims should be dismissed.

## V. Certificate of Appealability

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 20

**A. Applicable Law**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *See Hohn v. United States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

*Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits. The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit. *Lambright*, 220 F.3d at 1025. Any doubt as to whether a petitioner has met the standard is resolved in his favor. *Id*.

Where, as here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lambright*, 220 F.3d at 1026 (quoting *Slack*, 529 U.S. at 484).

Finally, the COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue." Fed. R. App. P. 22(b)(1) (emphasis added). The Court need not explain why a certificate *should* issue. *Id.*

**B. Discussion**

Sedler's argument that he did not commit the crimes of which he was convicted simply is not supported by the evidence he presents in his own submissions. His case came down to whether he or the other witnesses were more credible. This Court cannot disturb a jury's credibility determinations on habeas review.

Nor has Sedler shown that trial counsel was ineffective. The issue regarding the trial court's slip of the tongue in reading one of the jury instructions is frivolous. Sedler had counsel in postconviction proceedings in the state court, yet he made no showing as to what another psychological evaluation would have shown and so no showing of prejudice as a result of trial counsel's

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 22

failure to obtain one.  Sedler also made no showing that there was a reasonable probability that he would have been acquitted of any charge if only trial counsel had emphasized Sedler's explanation for his threat to burn down Maling's house.  The jury heard and rejected Sedler's explanation.  As for the misinformation regarding time to appeal, Sedler does not claim that he instructed his trial attorney to appeal, he shows no nonfrivolous grounds for appeal, the claim is procedurally defaulted, and Sedler voluntarily dismissed his appeal when he pursued it.

Finally, Sedler's claims for defamation and money damages are plainly outside the scope of habeas relief.

For all these reasons, a COA should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

Sedler's Petition (docs. 1, 5) should be DENIED and a certificate of appealability should be DENIED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Petitioner.  Petitioner is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[11]

---

[11]   In prisoner cases, this Court extends the time to object to twenty days in order to take into account the Supreme Court's ruling in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), and the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 23

after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Sedler must immediately inform the Court of any change in his mailing address while his case remains pending in this Court. Failure to do so may result in dismissal of the case without notice to him.

DATED this 26th day of September, 2006.


                                    /s/ Jeremiah C. Lynch
                                    Jeremiah C. Lynch
                                    United States Magistrate Judge

_____

somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 24